## Hendrickson v. Commonwealth.

(Decided January 21, 1930.)

B. B. GOLDEN for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Moscow Hendrickson was indicted for the murder of Green Hoskins. ' On the trial of the case he was found guilty of manslaughter and his punishment fixed at 18 ·years' imprisonment. The proof shows that there had been some bad feeling between Green Hoskins and Moscow Hendrickson. ,On Sunday morning, September 9, 1928, about 3:00 a. m., Hendrickson appeared at Hoskins' house, and stopping at the gate called three times for Green Hoskins to come out. On the third call Hoskins came out, and a few minutes later both of them were foun found lying at the gate; Hoskins was dead, and Hendrickson was badly wounded. Letcher LeFevers was in the house with Green Hoskins when Hendrickson came. They were sitting in the dinning room talking and had been since about 12 o'clock. Gillis Saylor testified that he met Hoskins about an hour or more before the killing, and Hoskins said that Hendrickson and LeFevers were over there waylaying him, and, if he saw any of them, not to have anything to do with them, to get in the clear, and he would tend to them. Another witness testified that shortly before the killing appellant came to her house and was talking to her husband and said that Green Hoskins had been having some talk about him and he was going down there and call him out and see about it and he had to take it back or he or Green had to die. There was ·proof that the friend who was with appellant that night

advised him to go home as they went home, but that after this, about 2:30 a. m., after the friend had gone to bed, he came back to his house and then had a shotgun and a pistol. His friend advised him not to go to Hoskins' house; that he might have trouble. But he replied that "he would see about that talk;" that Hoskins had talked about him; and that one of them would die before daylight.

What took place out in the yard in the dark no one knew. But the widow of Hoskins testified to facts conducing to show that appellant was the aggressor. The shotgun and pistol were both there after the shooting. It is true that the widow, the next morning, made statements as to what occurred at Hoskins' house after he went out, inconsistent with her testimony on the trial and practically the same as the appellant's version as to what took place.

It is earnestly insisted that for this the verdict is palpably against the evidence. But the credibility of the witnesses is for the jury. If the commonwealth's evidence was true, the defendant, at 3 o'clock in the morning, because he saw a light in Hoskins' house, went there and called him out; Hoskins would not come out when he first called and he continued to call; he had been drinking, and while he says he did not go there for a difficulty, it is hard for the court to understand otherwise from the testimony. Under such proof the verdict of the jury will not be disturbed on the ground that it is palpably against the evidence.

It is earnestly insisted that the court erred in allowing Mrs. Hoskins to state that she was waked up by a noise at 12 o'clock. The defendant was in no way connected with this noise, and it is hard to see how he was prejudiced by this. The fact is that the noise, under the proof, was probably made by her husband and LeFevers when they came in; for they came in about 12 o'clock. The proof was competent as explaining why Mrs. Hoskins was awake and knew that her husband was in the dining room from that time until he was called out by appellant. She had a sick child that she was waiting on.

Appellant's testimony tended to show that Hoskins was killed by LeFevers, who was shooting at him with a gun from the house, and in the dark accidentally shot Hoskins and not him. He earnestly insists that the court should have told the jury by his instruction that, if they believed from the evidence that another person shot the

deceased and killed him, they should acquit the defendant. But that was, in substance, the instruction which the court gave, for the jury were expressly told that, unless they believed beyond a reasonable doubt that the defendant shot and killed the deceased, they should find him not guilty.

It is provided in the Code of Practice (Code Criminal Practice, sec. 353) that a judgment of conviction shall not be reversed unless for some error prejudicial to the substantial rights of the defendant on the whole case. Plainly this rule must be applied here. The defendant had a fair trial on the real merits of his case and the verdict of the jury, seeing and hearing the witnesses, cannot be disturbed.

Judgment affirmed.